August 12, 1977

## 77–46  MEMORANDUM OPINION FOR THE DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET

### Legal Questions Raised by the Library of Congress Critique of Reorganization Plan No. 1 of 1977

This is in response to the request of your Office for my opinion on the legal questions raised by the Library of Congress Critique of Reorganization Plan No. 1 of 1977. The critique raises many questions of policy and discusses a number of general legal issues, but it specifically challenges the legality of only a few aspects of the plan. Our response is limited to those specific legal challenges. For the reasons that follow, we do not believe that the critique's conclusions respecting these aspects of the plan are warranted.

#### Domestic Council Staff

Section 1 of the plan provides that "the Domestic Council staff. is hereby designated the Domestic Policy Staff"; it further provides that "the staff shall continue to be headed by an Executive Director who shall be an Assistant to the President, designated by the President, as provided in Section 203 of Reorganization Plan No. 2 of 1970." The critique asserts that this provision violates Section 904 of the Reorganization Act of 1977, 5 U.S.C. § 904, by failing to provide for Senate confirmation of the Executive Director of the Domestic Policy Staff. Section 904 reads in pertinent part:

> A reorganization plan transmitted by the President containing provisions authorized by paragraph (2) of this section may provide that the head of an agency be an individual or a commission or board with more than one member. In the case of an appointment of the head of such an agency, the term of office may not be fixed at more than four years, the pay may not be at a rate in excess of that found by the President to be applicable to comparable officers in the executive branch, and if the appointment is not to a position

in the competitive service, it shall be by the President, by and with the advice and consent of the Senate.

As is readily apparent from this provision, the requirement respecting Senate confirmation is not made applicable to every official who has some vague connection with a reorganization plan; rather, it applies only "in the case of an appointment of the head of such an agency." The term "the head of such an agency" can only refer to those officials described in the previous sentence. The sentence allows the head of an agency to be an individual or a multimember board; what is more important for our purposes, however, is that it clearly contemplates an appointment of such officers pursuant to paragraph (2) of § 904. The term "the head of such an agency," then, refers to heads of agencies appointed in accordance with the provisions of that paragraph.[1]

We do not believe that the Executive Director of the Domestic Policy Staff is such an official. Paragraph (2) applies only to officials for whom arrangements regarding appointment and pay must be made "by reason of a *reorganization*" [emphasis added], and we doubt that the action taken by the plan with respect to the Domestic Council fits within § 904's definition of "reorganization." Section 904 defines that term to "mean a transfer, consolidation, coordination, authorization, or abolition, referred to in Section 903 of this title." 5 U.S.C. § 902(2). These terms defining "reorganization" and their elaboration in section 903 contemplate a change in the functions of an agency; but no such changes are effectuated here. The functions of the staff will remain the same as before; under both plan No. 1 of 1977 and plan No. 2 of 1970, the staff is (by reason of the duties imposed on the Executive Director) to "perform such functions as the President may from time to time direct." We thus believe that the requirement of Senate confirmation is inapplicable here.

The purposes underlying the requirement of Senate confirmation would also seem to support this result. It would make little sense to require Senate confirmation of an official not previously subject to this requirement merely because he or she is in some way involved in a reorganization—particularly where, as here, his or her functions remain exactly the same. Rather, the requirement appears designed to protect congressional prerogatives in situations where *new offices* are created. This intent seems apparent in Congress' linking the requirement of Senate confirmation to situations where provisions for appointment and pay of officials are necessary—and such provisions would be necessary only where new offices are being created. The legislative history of the predecessor of § 904 bears this out; it reveals that Congress wanted to

---

[1] This interpretation is further supported by the fact that the provision requiring Senate confirmation was originally included within a provision which is the precursor of paragraph (2). *See* Reorganization Act of 1945, ch. 582, § 4(2) 59 Stat. 614. The statute was later amended to reflect its present form, Act of Dec. 10, 1971, Pub. L. No. 92-179, § 3, 85 Stat. 575, but the legislative history clearly indicates that no substantive changes were intended. *See* S. Rep. No. 485, 92nd Cong., 1st sess. 4-5 (1971).

impose restrictions on the President's power to reorganize "with respect to the creation of *new positions.*" S. Rep. No. 638, 79th Cong., 1st Sess. 6 (1945). [Emphasis added.] The plan can hardly be said to have created a new position here. It expressly states that the staff "shall *continue* to be headed by an Executive Director" [emphasis added], and it confers no new functions on the Executive Director or the staff by which he could be regarded as having a new position.

Finally, another aspect of the plan supports our conclusion. Because all it purports to do is to change the name of the staff of the Domestic Council, the plan would appear to fall within the provisions of paragraph (1) of § 904. This paragraph allows the President to

> change . . . the name of an agency affected by a reorganization and the title of its head. . . .

Because Congress structured § 904 to require Senate confirmation only with respect to officials provided for under paragraph (2), we believe it would be contrary to Congress' intent to extend this requirement to situations where only action under paragraph (1) has been taken.

The critique further argues that the Executive Director of the Domestic Council should have been required to be confirmed by the Senate under Reorganization Plan No. 2 of 1970. If this be so, the fact that under plan No. 1 of 1977 the Executive Director would continue in his previous position, seems to require an adjustment to provide for Senate confirmation. However, the Attorney General had ruled that the arrangement in the plan No. 2 of 1970 did not violate provisions similar to those at issue here. The Attorney General relied on the fact that then—as now—the Executive Director was to be an Asistant to the President appointed under other statutory provisions, and commented that "carried to its logical conclusion, this argument would require the 'reappointment' in accord with 5 U.S.C. § 904(2) of any properly appointed officer given an additional title and duties by a reorganization plan." [2] While there were those in Congress who took a contrary view, *see, e.g.,* H.R. Rep. No. 1066, 91st Cong., 2d Sess. 3–6, 56–57 (1970), the fact remains that Congress did not disapprove the 1970 reorganization. We think this fact strongly implies that Congress regarded Reorganization Plan No. 2 of 1970 as complying with existing law and congressional intent, because it was done with full knowledge of the objections to its approval. We do not believe that Reorganization Plan No. 2 of 1970 was in violation of law, and, accordingly, there is no need to provide for Senate confirmation in plan No. 1 of 1977.

We conclude that there is no requirement under § 904 of the Reorganization Act of 1977 that the position of Executive Director of the Domestic Policy Staff be made subject to Senate confirmation.

---

[2] Letter from the Attorney General to the Chairman of the Subcommittee on Government Operations, House of Representatives, dated May 6, 1970.

## Assistant Secretary of Commerce

The critique argues that the wording and intent of Section 4 of the plan, regarding the appointment of an Assistant Secretary of Commerce, is ambiguous. We disagree.

That section now reads:

> There shall be in the Department of Commerce an Assistant Secretary for Communications and Information who shall be appointed by the President, by and with the advice and consent of the Senate, and who shall be entitled to receive compensation at the rate now or hereafter prescribed by law for Level IV of the Executive Schedule.

While the language "there shall be . . . an Assistant Secretary" could conceivably suggest that a present Assistant Secretary is to be delegated new functions, we doubt that this language would be used if there were such intent. Moreover, any doubt on the matter is resolved by the President's statement that certain functions were being "transferred to a *new* office within the Department of Commerce, headed by a *new* Assistant Secretary for Communications and Information" [emphasis added]; the message also stated that the plan would "create" an Assistant Secretary—which implies that there is to be an Assistant Secretary where none had previously existed.

## Compliance with House of Representatives Rules

Clause 2 of Rule XXI of the House of Representatives provides that no appropriations may be reported by the House Appropriations Committee in any general appropriations bill for expenditures not previously authorized by law. The critique notes that, if the Domestic Policy Staff is subsumed in the White House Office, a violation of this clause will result. The reason given is that several budget accounts in the Executive Office of the President—including the White House Office—are already in violation of this clause in whole or in part.

We do not believe it appropriate for us to respond to this aspect of the critique. If there is a violation, it is a violation of an internal rules of procedure that the House of Representatives has the responsibility to interpret and apply.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*